UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

DAVID DYWANE WILLIAMS,

    Plaintiff,

    v.                                         CAUSE NO. 3:20-CV-798-JD-MGG

HENSLEY,

    Defendants.

OPINION AND ORDER

David Dywane Williams, a prisoner without a lawyer, filed an amended complaint against five defendants alleging he was attacked by fellow inmates at the Miami Correctional Facility. ECF 16. "A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation marks and citations omitted). Nevertheless, under 28 U.S.C. § 1915A, the court must review the merits of a prisoner complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief.

Williams alleges he was stabbed on June 24, 2020, while walking to breakfast from F Dorm. Followed by his attackers, he walked to Sgt. Hensley and Officer Rish who had not seen the attack nor known of the impending danger to Williams in advance. They secured Williams and sent him for medical treatment. Williams sues them because they did not call for help from other officers, detain his attackers, nor

investigate the attack. Though he alleges other inmates were menacing after he had been secured, there is no indication the failure to call other officers to help caused him any injury. Moreover, "[t]here is no affirmative duty on police to investigate." *Whitlock v. Brueggemann*, 682 F.3d 567, 588 (7th Cir. 2012) *citing Town of Castle Rock v. Gonzales*, 545 U.S. 748 (2005). *See also Rossi v. City of Chicago*, 790 F.3d 729, 735 (7th Cir. 2015) ("We note at the outset that Rossi does not have a constitutional right to have the police investigate his case at all, still less to do so to his level of satisfaction.").

Williams alleges Warden Hyatt, Sgt. Hensley, and Officer Rish knew the Miami Correctional Facility was understaffed on June 24, 2020. He alleges they knew inmates had previously attacked both inmates and guards. He sues them because they did not do more to protect him. Under the Eighth Amendment, correctional officials have a constitutional duty to protect inmates from violence. *Grieveson v. Anderson*, 538 F.3d 763, 777 (7th Cir. 2008). But, "prisons are dangerous places. Inmates get there by violent acts, and many prisoners have a propensity to commit more." *Id*. Therefore, a failure to protect claim cannot be based "merely on knowledge of general risks of violence in a detention facility." *Brown v. Budz*, 398 F.3d 904, 913 (7th Cir. 2005). To state a claim for failure to protect, the plaintiff must establish "the defendant had actual knowledge of an impending harm easily preventable, so that a conscious, culpable refusal to prevent the harm can be inferred from the defendant's failure to prevent it." *Santiago v. Wells*, 599 F.3d 749, 756 (7th Cir. 2010). Here, the complaint does not allege any of these defendants had such knowledge. It merely alleges they knew the prison was dangerous.

2

Williams alleges after he was released from the hospital on July 2, 2020, he filed grievances which were denied by S. Morson. He sues S. Morson because an investigation was not conducted before or after he filed the grievance. As noted, there is no right to an investigation. Moreover, "the Constitution does not require that jails or prisons provide a grievance procedure at all, nor does the existence of a grievance procedure create a constitutionally guaranteed right." *Daniel v. Cook Cty.*, 833 F.3d 728, 736 (7th Cir. 2016). Therefore the complaint does not state a claim against S. Morson.

Williams alleges Case Manager Keifer transferred him from G Dorm to E Dorm on August 21, 2020. He alleges he told her he had been put on G Dorm by internal affairs for safety reasons after he had been attacked in June. What he does not allege telling her is about a specific, substantial danger if he was moved to E Dorm. Rather, he merely alleges telling her he had been attacked in the past and feared being attacked again in the future if he was moved. That was not specific enough to state a claim.

> To establish deliberate indifference on the part of the defendants sued individually, Klebanowski needed to show that the officers acted with the equivalent of criminal recklessness, in this context meaning they were actually aware of a substantial harm to Klebanowski's health or safety, yet failed to take appropriate steps to protect him from the specific danger. Klebanowski testified during his deposition that he told officers twice on September 8 that he was afraid for his life and he wanted to be transferred off the tier. Those statements, and the officers' knowledge of the first beating, are the only pieces of evidence in the record that can assist Klebanowski in his attempt to show that the officers were aware of any risk to him. We have previously held that statements like those made by Klebanowski are insufficient to alert officers to a specific threat. *Butera*, 285 F.3d at 606 (deeming insufficient to establish deliberate indifference statements by a prisoner that he was "having problems in the block" and "needed to be removed"). In *Butera*, we deemed the inmate's statements insufficient to give notice to the officers because they did not provide the

3

>identities of those who threatened the inmate, nor state what the threats were. *Id*.
>
>The facts of this case make clear our reason for requiring more than general allegations of fear or the need to be removed. By Klebanowski's own testimony, the officers knew only that he had been involved in an altercation with three other inmates, and that he wanted a transfer because he feared for his life. He did not tell them that he had actually been threatened with future violence, nor that the attack on September 8 was inflicted by gang members because of his non-gang status. Without these additional facts to rely on, there was nothing leading the officers to believe that Klebanowski himself was not speculating regarding the threat he faced out of fear based on the first attack he suffered. This lack of specificity falls below the required notice an officer must have for liability to attach for deliberate indifference.

*Klebanowski v. Sheahan*, 540 F.3d 633, 639-40 (7th Cir. 2008) (footnote omitted).

Finally, Williams alleges Sgt. Hensley transferred him on September 27, 2020, from J Dorm to restrictive housing for eighty days in retaliation when she found out he had sued her on September 21, 2020. "To establish a prima facie case of unlawful retaliation, a plaintiff must show (1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was at least a motivating factor in the Defendants' decision to take the retaliatory action." *Douglas v. Reeves*, 964 F.3d 643, 646 (7th Cir. 2020) (quotation marks omitted). "[A]n inmate's liberty interest in avoiding segregation is limited." *Hardaway v. Meyerhoff*, 734 F.3d 740, 743 (7th Cir. 2013). Even "six months of segregation is not such an extreme term and, standing alone, would not trigger due process rights." *Marion v. Columbia Correction Inst.*, 559 F.3d 693, 698 (7th Cir. 2009) (quotation marks omitted). However, a retaliation claim may be asserted even if the retaliatory act does not independently violate the Constitution.

4

*Zimmerman v. Tribble*, 226 F.3d 568, 573 (7th Cir. 2000). Here, the complaint plausibly alleges eighty days in restrictive housing would likely deter First Amendment Activity in the future.

For these reasons, the court:

(1) GRANTS David Dywane Williams leave to proceed against Sgt. Hensley in her individual capacity for nominal and punitive damages for retaliating against him on September 27, 2021, for filing this lawsuit by placing him in restrictive housing for eighty days in violation of the First Amendment;

(2) DISMISSES all other claims;

(3) DISMISSES Hyatt, S. Morson, Keifer, and Rish;

(4) DIRECTS the clerk to request Waiver of Service from (and if necessary, the United States Marshals Service to serve process on) Sgt. Hensley at the Indiana Department of Correction, with a copy of this order and the amended complaint (ECF 16), under 28 U.S.C. § 1915(d);

(5) ORDERS the Indiana Department of Correction to provide the full name, date of birth, and last known home address of any defendant who does not waive service if it has such information; and

(6) ORDERS, under 42 U.S.C. § 1997e(g)(2), Sgt. Hensley to respond, as provided for in the Federal Rules of Civil Procedure and N.D. Ind. L.R. 10-1(b), only to the claims for which the plaintiff has been granted leave to proceed in this screening order.

SO ORDERED on December 2, 2021

/s/JON E. DEGUILIO
CHIEF JUDGE
UNITED STATES DISTRICT COURT